IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KEON V. LIPSCOMB,

    Plaintiff,

v.

JACOB ROCK,[1]

    Defendants.

Case No. 24-cv-1716-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Keon V. Lipscomb, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pontiac Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Menard Correctional Center.

This matter is before the Court on Defendant Jacob Rock's motion for summary judgment (Doc. 24). Lipscomb filed a response to the motion (Doc. 25). Rock filed a reply brief (Doc. 26). On July 15, 2025, the Court held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008).

## BACKGROUND

On July 16, 2024, Lipscomb filed a Complaint against Jacob Rock alleging that Rock verbally harassed and threatened him (Doc. 1). Lipscomb alleged that on July 14, 2024,

---

[1] Jacob Rock has identified himself by his proper name. The Clerk of Court is DIRECTED to CORRECT the docket to reflect Rock's proper name.

1

while on crisis watch, officers were passing out ice to the inmates due to the excessive heat (Doc. 10, p. 2). Rock approached Lipscomb but refused to provide him ice. Rock accused Lipscomb of being a rapist and threatened to rape and kill him (*Id.*). Rock noted that he was aware of another officer's rape of Lipscomb and he also threatened to rape him. Thirty minutes later, Rock again approached Lipscomb's cell and turned the hot water in his cell all the way up, causing water to spew out and cover Lipscomb's cell (*Id.*). As of the filing of his Complaint, Lipscomb alleged that Rock continued with daily threats to kill and rape him (*Id.*).

After a review of the Complaint pursuant to 28 U.S.C. § 1915A, Lipscomb was allowed to proceed on the following counts:

> Count 1:   Eighth Amendment cruel and unusual punishment claim against Jacob Rock for verbally harassing and threatening Lipscomb as well as dousing his cell in hot water.
>
> Count 2:   Illinois state law claim for intentional infliction of emotional distress for Rock's harassment and threats.

(Doc. 10, p. 3).

### A. Summary Judgment Motion

Jacob Rock argues that Lipscomb failed to exhaust his administrative remedies prior to filing his lawsuit. Lipscomb filed his lawsuit just two days after the incident with Rock, which allegedly occurred on July 14, 2024. In the short time frame, neither the Administrative Review Board nor the prison received any grievances from Lipscomb (Docs. 24-1, 24-2).

In response, Lipscomb argues that the grievance process was unavailable to him because he was on suicide watch at the time of the incident. On suicide watch, inmates are not allowed access to pen and paper (Doc. 25, p. 5). Lipscomb argues that he sought help from counselors and mental health staff to file grievances. But all help was refused, and he was unable to access the grievance process (*Id.*).

Lipscomb points to entries in his Cumulative Counseling Summary where he asked for helping writing grievances while on crisis watch (Doc. 25, pp. 7-10). Those include entries on: February 15, March 7 and 20, April 25, May 10, and May 16, 2024 (*Id.*). On March 7, 2024, a law library clerk was sent to Lipscomb's cell to assist him in filling out a grievance (*Id.* at p. 7). Further, Lipscomb submitted grievances on March 15, 2024, and April 1, 2024 (*Id.* at p. 8). He requested help with grievances from mental health staff on April 12, April 20, April 21, April 24, and June 2, 2024 (*Id.* at pp. 11-28).

Lipscomb also argues that his life was in imminent danger, and he could not wait to file a grievance before filing his Complaint. He alleges that he spoke to mental health staff about these dangers and those incidents were reported to the warden, but nothing was done to prevent future assaults.

**B. Evidentiary Hearing**

On July 15, 2025, the Court held a joint evidentiary hearing in *Lipscomb v. Wills*, Case No. 24-cv-1590-NJR, *Lipscomb v. Wills*, Case No. 24-cv-1233-NJR, and this case. The Court heard testimony from Lipscomb, counselor Sarah Quick, and Administrative Review Board ("ARB") Chairperson Ryan Nothnagle.

1. **Lipscomb**

Lipscomb testified that while on suicide watch, he spoke to mental health staff on a daily basis and requested help with filing grievances. He also pointed to the entry in his counseling summary where he inquired of Counselor Strong how to file a grievance without access to grievance forms and pens. In response, a clerk from the library came to his cell and filed the grievance for him. He was able to file that grievance in March but was not able to file any additional grievances because officers told the library clerk not to help him.

Lipscomb testified that he informed mental health staff about his complaints during their daily appointments in order to create a paper trail of his claims and his requests for grievances. He learned that mental health staff reported all his statements to the warden. In response, he requested grievances and explained his issues to mental health staff to relay his issues to the warden. He was not allowed access to a pen or paper because he was on crisis watch. Lipscomb acknowledged sneaking a pen into his cell from an officer. He also had paper in the form of mail that he received. Lipscomb testified that he wrote his Complaint for his case on old pieces of mail in his cell. Although individuals were able to smuggle pens to Lipscomb, he testified he was unable to get grievance forms from anyone.

Lipscomb also testified that he believed he was in imminent danger because the environment in crisis watch was hostile. He would get into arguments with the officers, and they would fight and disrespect him, have other people mistreat him, spray him with mace, and refuse him showers. He believed he was being mistreated and in danger.

## 2. Sara Quick

Sara Quick is currently assigned as a temporary grievance officer but has been employed at Menard in other roles since March 2004. Quick reviewed the grievance logs, the log where grievances are stamped as received, for the relevant time period and there was only one grievance received by the grievance office from Lipscomb from March 28, 2024, through July 16, 2024. That grievance was dated March 28, 2024.

Quick testified that inmates on crisis watch are able to file grievances. They speak to mental health staff every day. The inmate can inform mental health staff of his need to write a grievance, and that request gets relayed to clinical services. The clinical service counselor will then go to the unit, take the inmate to a room, and transcribe the grievance for the inmate. The counselor then initials the grievance to note it was written by the counselor.

When asked by Lipscomb whether law library clerks are ever sent over to write grievances for an inmate on crisis watch, Quick indicated she was not aware of that procedure. She insisted that the grievance is written by the counselor in a special room in the crisis unit. She noted that it was the same room used by mental health to talk with the inmates, and there are approximately five rooms in the crisis watch unit.

## 3. Ryan Nothnagle

Ryan Nothnagle testified that he receives grievances and documents them on a program called IGRV. He testified that the ARB did not receive any grievances from Lipscomb from March 28, 2024, through July 16, 2024.

5

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge.

Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Lipscomb was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the

7

>names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the [CAO] within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the

8

appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## DISCUSSION

Defendant argues that Lipscomb failed to file any grievances during the short period between the incident at issue in this case on July 14, 2024, and when he filed his Complaint two days later, on July 16, 2024. Lipscomb does not dispute that he did not file any grievances about his claims but argues that he was on crisis watch and lacked access to grievance forms or any ability to file a grievance. Defendant bears the burden of

9

proving that Lipscomb failed to exhaust his administrative remedies. *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

The Court finds Lipscomb's testimony about his inability to file grievances while on crisis watch to be credible. Lipscomb testified that he tried to file grievances but could not write them on his own because he was on crisis watch and, instead, was forced to request help with writing his grievances.[2] His testimony is supported by several mental health progress notes from the relevant time period where he consistently requested access to grievances and the grievance process (Doc. 25, pp. 11, 13, 17). On April 12, 2024, Lipscomb specifically asked the mental health professional for help writing a grievance, noting that the mental health staff were supposed to sit down and help him write grievances and take down his concerns (*Id.* at p. 17). The mental health professional responded that mental health was not used for those purposes but that he could schedule Lipscomb for a "one on one." (*Id.*). The progress note does not indicate the nature of a "one on one" meeting, nor is there any indication in the records that one was ever scheduled for Lipscomb. Lipscomb's Cumulative Counseling Summary also documents several requests in April and May for help writing grievances (Doc. 25, pp. 8-9). None of the entries indicates that someone was sent to Lipscomb's cell to write a grievance.

---

[2] Lipscomb apparently did have access to pen and paper because he was able to file his Complaint. But Lipscomb testified that a pen was smuggled into his cell, and he used pieces of mail to write his Complaint. His Complaint is, indeed, short, handwritten, and appears to be written on scraps of mail and other paper (Doc. 1). There is no evidence in the record to suggest he had access to grievance forms in his cell.

Not only do the mental health progress notes and Cumulative Counseling Summary support Lipscomb's testimony, but the documents also directly contradict Sara Quick's testimony about filing grievances while on crisis watch. She testified that while on crisis watch, an inmate can inform mental health staff during their daily visit that the inmate needs to file a grievance. Then, someone from clinical services will pull the inmate out of his cell and help him draft a grievance. But the progress notes demonstrate that Lipscomb was continually asking for help writing a grievance, and there is simply no evidence that he was pulled out of his cell to draft one. Further, the Cumulative Counseling Summary indicates that on March 7, 2024, Lipscomb inquired about being pulled out of his cell to write a grievance, and Counselor Strong indicated that she was not aware of that policy (Doc. 25, p. 7). Instead, a law library clerk was sent to draft a grievance at Lipscomb's cell (*Id.*). Although Quick testified to the policy, the documents in the record make clear that the policy was not followed in this case. Lipscomb specifically asked Strong about this policy, and she had never heard of it. He was clearly asking for help with grievances from mental health staff, and the records are silent as to whether that help was provided.

Thus, the records support Lipscomb's testimony that the grievance process while on crisis watch was unavailable to him during this period. *Ross v. Blake*, 578 U.S. 632, 644 (2016) (Administrative remedies can be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process."). *See also Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The records support Lipscomb's testimony that he made requests to obtain grievances. Further, the

11

records are silent as to whether officials sought to accommodate those requests. In fact, it appears there was confusion between mental health and the counselor as to the actual policy on filing grievances on crisis watch. Further, Defendant has failed to offer any evidence that Lipscomb had access to the grievance process during the relevant time.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

DATED: **July 22, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**